AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | FILED | LODGED |
| RECEIVED |
| **Jan 31, 2022** |
| CLERK U.S. DISTRICT COURT |
| WESTERN DISTRICT OF WASHINGTON AT TACOMA |
| BY _____ DEPUTY |

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Information associated with Instagram account "itssdree_" that is stored at
premises controlled by Facebook, Inc.,
as more fully described in Attachment A.

)
)
)
)
)
)

Case No.   MJ22-5015

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Information associated with Instagram account "itssdree_" that is stored at premises controlled by Facebook, Inc., incorporated herein by reference.

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & 846 | Distribution of, and Possession with Intent to Distribute, Controlled Substances, & Conspiracy to do same. |
| 8 U.S.C. § 1234 | Alien Smuggling |

The application is based on these facts:

✓  See Affidavit of DEA Special Agent Steven Meyer continued on the attached sheet.

☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Steven Meyer, DEA Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
⊙ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  1/31/22

_____
*Judge's signature*

City and state:  Tacoma, Washington

J. Richard Creatura, United States Magistrate Judge
*Printed name and title*

**Attachment A**

**PROPERTY TO BE SEARCHED**

This warrant applies to information associated with Instagram account "itssdree_" (active on, but not limited to, January 17, 2021), that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

# ATTACHMENT B

## (ITEMS TO BE SEARCHED AND SEIZED)

**I.**      **Information to be disclosed by Facebook, Inc. ("Facebook")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Facebook, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on January 18, 2022, Facebook is required to disclose the following information to the government for each account or identifier listed in Attachment A:

     A.      All business records and subscriber information, in any form kept, pertaining to the Account, including:

         1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

         2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

         3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

         4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

         5.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

         6.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from January 1, 2021 to present;

ATTACHMENT B (Jackson Instagram)
Page 1 of 3
USAO 2019R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.    Privacy and account settings, including change history; and

8.    Communications between Facebook and any person regarding the account, including contacts with support services and records of actions taken;

B.    All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, January 1, 2021 to present;

C.    All content, records, and other information relating to communications sent from or received by the Account January 1, 2021 to present; including but not limited to:

1.    The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.    All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.    All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.    All associated logs and metadata;

D.    All content, records, and other information relating to all other interactions between the Account and other Instagram users January 1, 2021 to present, including but not limited to:

1.    Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.    All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

ATTACHMENT B (Jackson Instagram)
Page 2 of 3
USAO 2019R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.      All contacts and related sync information; and

4.      All associated logs and metadata;

E.      All records of searches performed by the account January 1, 2021 to present; and

F.      All location information, including location history, login activity, information geotags, and related metadata January 1, 2021 to present;.

Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**B**.        **Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 21 U.S.C. § 841(a)(1) & 846 and 8 U.S.C. § 1234, those violations involving Andre Lamount JACKSON, and others known and unknown, and occurring after January 1, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) The sale of illegal drugs and the illegal transportation of aliens into the United States,

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to the sale of illegal drugs and the illegal transportation of aliens into the United States, including records that help reveal their whereabouts.

**AFFIDAVIT**

STATE OF WASHINGTON     )

                            )     ss

COUNTY OF PIERCE        )

I, Steven Meyer, being duly sworn on oath, depose and state:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with **"itssdree_"** that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC ("Instagram") a social-networking company owned by Facebook, Inc., headquartered in Menlo Park, California. This account is referred to as the **"SUBJECT ACCOUNT"**. For the reasons set forth below, the **SUBJECT ACCOUNT** is suspected to have been utilized by Andre Lamount JACKSON to communicate about his unlawful distribution of narcotics and alien smuggling through various means, including messaging with associates and advertising with pictures.

2.     The **SUBJECT ACCOUNT** to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Instagram/Facebook, Inc. to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the **SUBJECT ACCOUNT**.

3.     I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). Specifically, I am a Special Agent with the DEA, and have been since March 2017. I am currently assigned to the Seattle Field Division, Tacoma Resident Office. Prior to my employment with the DEA, I worked as a Uniformed Officer with the Secret Service in Washington, D. C.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

from June 2006 to April 2009.  I received formal training at the DEA Basic Agent Training in Quantico, Virginia.  The four-month Basic Academy included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

4.      During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in the current investigation.  I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include Mexico-based drug trafficking organizations.  These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses.  These investigations have included use of the following investigative techniques: confidential informants; undercover agents; analysis of pen register, trap and trace, and toll records; physical and electronic surveillance; wiretaps; and the execution of search warrants.  I have had the opportunity to monitor, listen to, and review transcripts and line sheets (prepared by linguists) documenting the content of intercepted conversations involving the trafficking of cocaine, heroin, methamphetamine, fentanyl, and other narcotics, by persons who used some form of code to thwart law enforcement.  I have also interviewed defendants at the time of their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or confidential sources (informants) at proffer interviews who were experienced in speaking in coded conversations over the telephone.  I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of cellular telephones and

AFFIDAVIT OF SA Meyer - 2
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  other electronic devices to facilitate communications while avoiding law enforcement
2  scrutiny.

3       5.     I have authored, planned, and participated in the execution of search
4  warrants authorizing the search of locations associated with drug traffickers and their co-
5  conspirators, such as residences, businesses, storage facilities, and vehicles.
6  Additionally, I have authored and supervised the execution of dozens of tracking
7  warrants, including multiple federal tracking warrant affidavits for vehicles and cellular
8  telephones.  I have testified at grand jury proceedings and written reports in the course of
9  investigations.  These investigations have resulted in numerous state and federal
10 prosecutions of individuals who have possessed, imported, or distributed controlled
11 substances, including methamphetamine, heroin, cocaine, suspected fentanyl pills, as well
12 as the seizure of those illegal drugs and the proceeds from their sale.

13      6.     This affidavit is made based upon my personal knowledge, training,
14 experience and investigation, as well as upon information provided to me and my review
15 of reports prepared by other law enforcement personnel.  This affidavit is made for the
16 purpose of establishing probable cause and thus does not include each and every fact
17 known to me concerning this investigation.

18      7.     Based on my training and experience and the facts as set forth in this
19 affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) § 846
20 (Distribution and Possession of a Controlled Substance with Intent to Distribute and
21 Conspiracy to do the same) and 8 USC 1324 (alien smuggling) have been committed by
22 Andre JACKSON.  There is also probable cause to search the **SUBJECT ACCOUNT**,
23 described in Attachments A, for evidence of these crimes and items to be seized, as listed
24 in Attachment B.

25                                              **JURISDICTION**

26      8.     This Court has jurisdiction to issue the requested warrant because it is "a
27 court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a),

28

AFFIDAVIT OF SA Meyer - 3
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . .

2  that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3  <center>**SOURCES OF INFORMATION**</center>

4       9.       In this investigation, law enforcement has received information from a

5  Confidential Source (CS). The CS is a reliable confidential source currently working with

6  HSI to receive favorable consideration for pending state charges relating to transportation

7  and possession of multiple-pound quantities of narcotics.  Immediately upon his/her

8  arrest, the CS admitted responsibility for his/her actions and began providing information

9  which has been corroborated by numerous law enforcement officers.  The CS has

10  provided information to agents regarding numerous drug trafficking organizations,

11  money laundering organizations and individuals involved in other criminal activities.

12  Agents have been able to corroborate identities, phone numbers and social media

13  accounts associated with these individuals that were provided by the CS.

14       10.      Per the CS's statements, the CS has worked for a drug trafficking

15  organization (DTO) operating in Washington State and told agents that he/she has

16  transported drugs and bulk currency for this drug trafficking organization.  Based on the

17  responsibilities the CS was tasked with by DTO members, I believe the CS is highly

18  trusted by high-ranking DTO members and by other individuals involved in drug

19  trafficking whom he/she has worked with in the past.  The CS has provided detail on the

20  operations of the DTO in Washington State, including concealment and transportation

21  methods, money laundering activities, and the use of cellular telephones by DTO

22  members.  This information is consistent with investigators' knowledge of techniques

23  employed by similar DTOs.  The CS further described how drugs were distributed once

24  they were trafficked from California, how money was transported to California and

25  laundered to Mexico, and the "seasons" when Mexico-based DTOs operated.  This

26  information has also been validated by investigators.  The CS provided addresses

27  associated with DTO activity, including the address of a legitimate business utilized by

28  multiple DTOs to launder and smuggle bulk cash to Mexico.  After the CS provided this

1  address, multiple law enforcement agencies contacted HSI about this address, and relayed
2  details consistent with the information provided by the CS.  From the time of his/her
3  arrest to the present, the CS has made numerous statements contrary to his/her self-
4  interest while explaining this drug trafficking activity.  This and other facts referenced
5  below further support his/her credibility.

6        11.     Pursuant to the CS's consent, law enforcement extracted data from the CS's
7  cellular phone.  Agents have reviewed this information, to include photographs and
8  private messages, and determined that it is consistent with the information the CS
9  provided, and with law enforcement's knowledge of the investigated activity.  This
10  further leads me to believe the CS has an extensive basis of knowledge and has been
11  forthcoming with investigators.

12        12.     Agents are in regular contact with the CS, and the CS has continued to
13  provide information about members of DTOs in Washington State and the TCO that is
14  the subject of this Affidavit.  The CS has been advised that any false information given to
15  investigators will void any agreement the CS has with HSI.  To my knowledge, the CS
16  has never provided false information to his/her controlling agents or any other law
17  enforcement entities.

18        13.     The CS's criminal history includes one arrest in California for two
19  misdemeanor offenses. These charges were dismissed.  The CS has been actively
20  participating in this investigation since approximately mid-2021.  As stated above,
21  information provided by the CS since then has been corroborated through records checks,
22  a controlled purchase, surveillance operations, and call record analysis, and through
23  findings from independent federal investigations

**STATEMENT OF PROBABLE CAUSE**

24

25  **A.     Background regarding Andre JACKSON**

26        14.     In July of 2021, HSI and the Seattle Police Department (SPD) began
27  conducting a criminal investigation of a transnational criminal organization (TCO)
28  operating out of Tijuana, Mexico with ties to Arizona, California, and Washington State,

AFFIDAVIT OF SA Meyer - 5
USAO2021R01126

1    regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846. Investigators believed

2    this TCO and its members, including JACKSON, were responsible for distributing

3    methamphetamine and pills containing fentanyl, a potentially deadly narcotic, in the

4    Western District of Washington.  In September of 2021, the Drug Enforcement

5    Administration (DEA), Bureau of Alcohol, Tobacco and Firearms (ATF) and the Naval

6    Criminal Investigative Service (NCIS) joined HSI and SPD in their investigation

7            15.    During the investigation, the CS has provided agents information about an

8    individual in Mexico operating a TCO with ties to Washington State.  The CS referred to

9    this individual as "La Rana," Spanish for "the frog."  According to the CS, La Rana

10   coordinates the trafficking of narcotics and other illicit merchandise from Mexico to stash

11   houses in the United States.  Per the CS, La Rana directs couriers who transport narcotics

12   from stash houses located in Arizona and California to northern states including

13   Washington.  Agents have witnessed calls between the CS and La Rana via phone

14   number 52-653-115-3146, a number based in Mexico, (hereinafter "the La Rana Phone"),

15   in which La Rana discussed his drug distribution operation, including details of types and

16   quantities of narcotics he could provide to the CS and the pricing of various narcotics.  In

17   these conversations La Rana also discussed manufacturing operations including

18   methamphetamine laboratories and gave the CS the rates he would pay individuals

19   smuggling narcotics across the US/Mexico border and transporting drugs within the

20   United States.  These conversations were in Spanish but were translated for agents by an

21   HSI employee fluent in the Spanish language.

22           16.    In August 2021, investigators utilized the CS to arrange a controlled

23   purchase of counterfeit oxycodone pills containing fentanyl from Andre JACKSON, a

24   courier working for La Rana.  The CS arranged the controlled buy with La Rana and

25   JACKSON by phone calls to the La Rana Phone and Target Telephone 2 (TT2)

26   (Jackson's phone). Through this controlled buy—a total of approximately 392 gross

27   grams of suspected fentanyl-laced pills in packaging material (estimated to be 3,500 pills)

28   were acquired from JACKSON.

17.     During the controlled buy, JACKSON was observed in a silver Dodge Challenger bearing California plate 8TQL397 and registered to Brenda Michelle ALVAREZ-Leyva at 442 South Alexandria Avenue, Apt 2, Los Angeles, California. Later that day, surveillance units observed JACKSON, in the Challenger, conduct an additional suspected drug transaction with Ashley McClure at the Winco Foods at 4969 Kitsap Way, Bremerton, Washington 98312.  McClure was observed in a white Volvo 850 bearing Washington plate BXY3563.  During their interaction, agents observed McClure exit the Volvo and walk to the driver's side of the Challenger and interact with JACKSON through the driver's window, while JACKSON remained in the driver's seat of the vehicle with the doors closed.  They interacted briefly, then McClure returned to the Volvo.  Shortly thereafter, both vehicles departed the area.  Based on my training and experience, I believe this interaction was consistent with a "hand-to-hand" drug transaction.

18.     Between September 2021 and December 2021, agents observed JACKSON, with an associate identified as Zaina Issa SUNNA, travel from the vicinity of Los Angeles, California, to western Washington multiple times to conduct suspected drug transactions.

19.     On September 24, 2021, at approximately 12:50 p.m., agents observed JACKSON and SUNNA meet with McClure again at the Winco's in Bremerton.  Agents observed JACKSON and SUNNA arrive in a silver VW Jetta, California plate 6ZJD348, and McClure arrive in the Volvo.  Following that, agents observed McClure exit the driver's seat of the Volvo with a black backpack that appeared to be empty based on the shape of the bag and the ease with which McClure carried it.  Surveillance units then observed McClure greet JACKSON and SUNNA**.**  SUNNA appeared to direct McClure into the rear passenger seat of the Jetta.  Agents observed that all parties remained in the Jetta for several minutes.  McClure exited the rear passenger seat with the same backpack, which now appeared to be full.  Agents noted that the backpack now appeared to be more rounded in shape and heavier, based on the way McClure had to sling it over

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

her shoulder to carry it.  Surveillance units watched McClure place the backpack on the front passenger's seat of her vehicle and walk around the front of the Volvo to access the driver's seat.  Shortly thereafter, both vehicles departed the area.  Based on my training and experience, and surveillance observations, I believed that JACKSON and SUNNA conducted a drug transaction with McClure.

20.     On December 1, 2021, location information on JACKSON's phone indicated that he had returned to Washington.  At approximately 9:30 a.m., agents established surveillance at the Gig Harbor Best Western hotel in order to identify JACKSON. Shortly thereafter, agents observed SUNNA exit the hotel and place items in the Jetta, before returning to the hotel.  Agents later observed SUNNA leave the hotel driving the Jetta and stop at several locations in the area, including a marijuana store and a thrift store, before returning to the Gig Harbor Best Western Hotel.

21.     At approximately 12:06 PM, agents observed SUNNA and JACKSON exit the hotel.  Agents observed JACKSON load a green suitcase, a black backpack and a gray bag into the back passenger seat of the Jetta.  SUNNA affixed a bike to the bike rack on the back of the Jetta.  Agents observed SUNNA get into the passenger's seat of the Jetta and JACKSON enter the driver's seat.  Agents then followed the Jetta to several locations including a Burger King and a gas station in Gig Harbor before the Jetta arrived at the Lowe's Home Improvement store located at 150 SW Sedgwick Road, Port Orchard, Washington, 98367 at approximately 12:56 PM and parked in the lot.  Both SUNNA and JACKSON remained inside the vehicle for several minutes.  Agents then observed SUNNA get out of the Jetta, walk around the parking lot, and reenter the car several minutes later.

22.     At approximately 1:14 PM, agents observed an unidentified white male on a black motorcycle arrive and park in the Lowe's lot, dismount, and then walk to the Jetta.  The motorcycle driver had goatee facial hair and was wearing a beanie hat.  This individual entered the rear passenger's seat of the Jetta, with SUNNA and JACKSON still inside.  At approximately 1:19 PM, the motorcycle driver exited the Jetta and drove

AFFIDAVIT OF SA Meyer - 8
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    his motorcycle away.  Based on my training and experience, I believe this interaction was
2    consistent with a "hand-to-hand" drug transaction.
3        **B.**    **JACKSON's Use of Instagram & Involvement in Alien Smuggling**
4        23.    Agents are familiar with JACKSON'S appearance through previous
5    investigations and by reviewing his photograph in the California driver's licensing (DOL)
6    database. Investigators determined that JACKSON had an Instagram user account of
7    **"itssdree_ (SUBJECT ACCOUNT)."** Investigation into the account showed that
8    JACKSON's photograph was featured in multiple posts.  Agents also learned that
9    JACKSON had multiple photos of the silver Dodge Challenger observed at the controlled
10   buy between the CS and JACKSON in August 2021.  Additionally, agents observed that
11   JACKSON was associated with the #LynchMobb on Instagram.  The #LynchMobb is
12   believed to be a street racer/car club group out of Los Angeles (where agents believe
13   JACKSON lived).
14   <u>June 8, 2020 Arrest of Destiny Marissa LOMELI.</u>
15       24.    On June 8, 2020, at approximately 6:05 a.m., agents with the United States
16   Customs and Border Patrol (CBP) were performing interdiction duties at the Campo
17   Border Patrol Station in Campo, California and observed a black Infiniti, California
18   license 8PAX872, approaching the location.  Shortly thereafter, agents moved into the
19   flow of traffic and pulled next to the vehicle.  As a result of this action, the Infiniti
20   quickly veered onto the shoulder of the road.  Following that, agents conducted a vehicle
21   stop on the Infiniti.  Agents approached the vehicle and identified four passengers, which
22   they subsequently conducted immigration inspections on.  All four individuals – later
23   identified as Rosa GARCIA-Castillo, Gerardo Cesar GONZALES, Alejo RAMIREZ-
24   Martinez, and Efrain VASQUEZ-HERNANDEZ – stated that they were citizens of
25   Mexico illegally present in the United States.  Agents then asked the driver of the vehicle,
26   identified as Destiny Marissa LOMELI, what country she was a citizen of and she
27   responded "U.S." A short time later, agents placed all four passengers under arrest for
28

AFFIDAVIT OF SA Meyer - 9
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  being illegally in the United States under title 42 and placed LOMELI under arrest for 8

2  USC 1324 alien smuggling.  The vehicle was also seized as a smuggling conveyance.

3       25.    At approximately 7:55 a.m., CBP agents conducted a post-arrest interview

4  of LOMELI.  They presented her with a CBP "Consent to Search cell phone" form which

5  she acknowledged and gave consent to.  Following that, they read her a Department of

6  Homeland Security (DHS) "Notification of Right" form (English language version).

7  LOMELI stated she understood her rights and agreed to answer questions without the

8  presence of an attorney.  During the subsequent interview, LOMELI stated that she was

9  instructed by an individual named "Dre", at cell phone number 424-200-2274, to pick up

10  illegal aliens at two separate locations and take them to a hotel in Brawley, California.

11  LOMELI stated that she knew "Dre" through friends.  Homeland Security Investigators

12  (HSI) investigators were later able to identify "Dre" as Andre Lamount JACKSON based

13  on phone records for 424-200-2274 that showed JACKSON as the registered owner of

14  the phone.

15  November 11, 2020 Arrest of Cindy LARIOS.

16       26.    On November 11, 2020, at approximately 7:04 p.m., Cindy LARIOS

17  applied for admission into the United States from Mexico at the San Ysidro, California

18  Port of Entry.  LARIOS was driving a black KIA Sorrento, California license 7VOE380.

19  LARIOS informed CBP agents that she was a U.S. citizen traveling to Los Angeles,

20  California, and had nothing to declare.  Shortly thereafter, CBP agents conducted an

21  inspection of the vehicles cargo area and uncovered two individuals.  During a secondary

22  inspection, both undocumented individuals admitted they were from Mexico without the

23  legal documentation to enter the United States.  LARIOS stated that she was not paid by

24  either undocumented individuals and acknowledged that she was aware of the two people

25  inside the vehicle and knew it was illegal to bring people into the United States.

26       27.    Following the arrest of LARIOS, officers with the San Diego Field Office

27  Intelligence Division/Criminal Enforcement section interviewed her.  During the

28  interview, LARIOS stated that she initially met the smuggler via Instagram after she

AFFIDAVIT OF SA Meyer - 10
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   requested money online.  She obtained a response from a follower who she claimed she
2   had never met under the name Damani_24 offering her the job.  Damani_24 advised
3   LARIOS to reach out to JACKSON, referred to as "Dre", who was under the **SUBJECT**
4   **ACCOUNT** on Instagram.  LARIOS told agents that JACKSON started chatting with her
5   under WhatsApp with phone number 424-200-2274.  LARIOS said JACKSON told her
6   the job would consist of smuggling humans across the border.  If successful, the job
7   would pay $1,000 dollars per person.  LARIOS said she agreed to fit four people in her
8   trunk.  Following that, LARIOS said JACKSON told her to come down to 415 Parkway
9   Plaza, El Cajon. Upon her arrival at that location, LARIOS said she met with JACKSON
10  who told her that she would have to drive to Mexico and go to the Calle Coronado 400,
11  Playas de Rosarito to pick up the people.  LARIOS said she arrived at that location and
12  JACKSON contacted her and asked her to meet him at a hotel in front of a Soriana
13  supermarket.  When she arrived at the hotel, she met with two unidentified males and the
14  two females that she attempted to smuggle into the United States.  The unidentified males
15  placed the females into the vehicle and instructed LARIOS to drive to the border and
16  contact them when she had crossed.

17         28.      Agents conducted a search of the **SUBJECT ACCOUNT** and confirmed
18  that Damani_24 was a current follower as of January 18, 2022.

19  December 23, 2020 Arrest of Aunjae VICK.

20         29.      On December 23, 2020, at approximately 6:50 a.m., CBP agents observed
21  a black car, California license 8TAA083, parked on the right shoulder of Old Highway
22  80.  Agents observed a dark clothed individual run down the berm on the side of Old
23  Highway 80, then open the back passenger's door, and lay down on the seat.  Agents
24  pulled behind the vehicle, activated overhead lights, and requested backup.  Shortly
25  thereafter, backup units arrived, agents approached the vehicle and observed two
26  individuals laying down in the backseat trying to conceal themselves under a cardboard
27  box.  Once in close proximity to the vehicle, agents identified themselves to all the
28  individuals and questioned the two under the cardboard box as to their citizenship.  Both

AFFIDAVIT OF SA Meyer - 11
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   stated that they were from Mexico and had just crossed the United States/Mexico

2   International boundary illegally by jumping over the fence.  Following that, agents placed

3   all subjects under arrest.

4        30.    Later that day, agents identified the driver as Aunjae Emoni VICK and

5   advised her of her Miranda Rights at approximately 8:30 a.m.  VICK elected to speak

6   with agents without an attorney present.  VICK also gave consent to search her phone, as

7   noted on a phone consent form.  VICK told agents that she was born in Los Angeles but

8   currently lived in Las Vegas, Nevada with her boyfriend.  VICK claimed that at 3:00 a.m.

9   on December 23, 2020, an individual known as "Dre" contacted her to make a pick up in

10   the area of Jacumba, California.  VICK said she had smuggled one other time for "Dre"

11   and was paid five hundred dollars for each individual she picked up.  VICK said the prior

12   time she picked up one individual and took them to Los Angeles.  VICK said "Dre" and

13   his girlfriend took the individual in a white Mustang SRT and paid VICK five hundred

14   dollars.  Based on the information provided by VICK, agents believed that "Dre" was

15   JACKSON and conducted a search of the **SUBJECT ACCOUNT** to identify vehicles

16   similar to what VICK had described.  The result revealed pictures of a 2016 Ford

17   Mustang, California license 8KSV046, registered to Brenda Michelle ALVAREZ-Leyva.

18   Agents believed that ALVAREZ was the unidentified girlfriend of JACKSON who

19   VICK observed during their meeting in Los Angeles.

20   <u>January 17, 2021, Arrest of Christopher ORTEGA-Almaraz.</u>

21        31.    On January 17, 2021, Border Patrol agents were conducting anti-

22   smuggling operations in the Boulevard Border Patrol Area of Responsibility which is

23   southeast San Diego County and immediately north of the United States/Mexico

24   International Border.

25        32.    At approximately 11:35 a.m., agents observed two individuals get into a

26   silver SUV.  Approximately twenty seconds later, agents observed a silver Dodge

27   Journey, California license 8KSX155, driving west on Highway 80.  Agents observed

28   two individuals in the back of the vehicle lower their heads.  Agents began following the

AFFIDAVIT OF SA Meyer - 12
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  vehicle as it traveled approximately forty miles per hour.  Shortly thereafter, a marked
2  Border Patrol vehicle pulled behind the Journey and activated the vehicles emergency
3  lights and siren.  The driver of the Journey, later identified as Christopher ORTEGA-
4  Almaraz, accelerated his vehicle too approximately ninety four miles per hour.  Agents
5  pursued the Journey for a short time and then observed the vehicle pull over.  Following
6  that, agents pulled over and approached the vehicle.  They identified themselves and
7  asked ORTEGA his citizenship, to which he responded that he was a United States
8  citizen.  Following that, agents addressed the two occupants in the rear of the vehicle,
9  later identified as Jaime HERNANDEZ-Manuel and Yony MATILALA-Espinoza, as to
10  their country of citizenship.  HERNANDEZ and MATILALA stated they were citizens of
11  Mexico and did not have proper valid immigration documentation that would allow them
12  to enter or remain in the United States legally.  Shortly thereafter, agents placed
13  HERNANDEZ and MATILALA under arrest for being in the United States illegally and
14  ORTEGA under arrest for 8 USC 1324 Alien Smuggling.  The subjects and vehicle were
15  transported to the Boulevard Border Patrol Station in Boulevard, California.

16      33.      At approximately 12:55 p.m., agents conducted a post arrest interview of
17  ORTEGA at the Boulevard Border Patrol Station.  ORTEGA was advised that the
18  interview was being recorded by audio and video, to which he replied that he understood.
19  Agents presented ORTEGA with consent to search cell phone forms, which ORTEGA
20  initially declined to sign.  Agents also read and explained ORTEGA his Miranda Rights
21  and ORTEGA indicated that he understood his rights and declined to speak at that time.
22  Following that, agents terminated the interview.  However, after casework was completed
23  and ORTEGA was going to be released, ORTEGA stated he wanted to give a statement
24  to agents.  ORTEGA was reminded of his Miranda Rights and still wanted to speak with
25  agents.  ORTEGA also gave consent to search his phone.  During the subsequent
26  interview, ORTEGA said his initial contact was through Instagram with a contact named
27  Gassing_LA who had posted about making money as a driver.  After messaging with
28  Gassing_LA, ORTEGA was directed to the **SUBJECT ACCOUNT**.  ORTEGA said

1  when he communicated on the **SUBJECT ACCOUNT** that he was instructed to

2  download WhatsApp and given a contact number of 424-200-2274.  Following that,

3  ORTEGA said he met with JACKSON and an unidentified female.  ORTEGA said

4  JACKSON was in a 2000ish black Camaro and the female was in a gray Challenger.

5  ORTEGA said he was told that he would get a thousand dollars for both individuals.

6  ORTEGA also said he had conversations with JACKSON regarding using dark tint to

7  conceal individuals and even putting them in the trunk.  Agents identified and

8  photographed communications that ORTEGA had with JACKSON on the **SUBJECT**

9  **ACCOUNT**.

10      34.     Based on my training and experience, previous HSI investigations, and

11  research conducted on the **SUBJECT ACCOUNT**, I believe that JACKSON uses it to

12  conduct illegal activity, to include drug distribution and alien smuggling.  I further

13  believe that a search warrant into the contents of the account would reveal evidence of

14  this activity.

15          **TECHNICAL BACKGROUND REGARDING INSTAGRAM**

16      35.     I know from my training and experience that social media records such as

17  those held by Instagram may support evidence of current, on-going, future, and past

18  criminal activity. I know that such information may be used to identify victims,

19  witnesses, associates and co-conspirators. From my review of publicly available

20  information provided by Instagram about its service, including Instagram's "Terms of

21  Use" policy, "Data" policy, and "Information for Law Enforcement", I am aware of the

22  following about Instagram and about the information collected and retained by

23  Instagram's owner, Facebook, Inc.;

24      36.     Through the Instagram platform, Facebook, Inc. owns and operates a free-

25  access social-networking website of the same name that can be accessed at

26  http://www.instagram.com. Instagram allows users to create their own profile pages,

27  which can include a short biography, a photo of themselves, and other information. Users

28  can access Instagram through the Instagram website or by using a special electronic

AFFIDAVIT OF SA Meyer - 14
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    application ("app") created by the company that allows users to access the service
2    through a mobile device or tablet.

3        37.    Instagram permits users to post photos to their profiles on Instagram and
4    otherwise share photos with others on Instagram, as well as certain other social-media
5    services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on
6    Instagram, a user can add to the photo, a caption; various "tags" that can be used to
7    search for the photo (e.g., a user made add the tag #Chevy so that people interested in
8    Chevrolet vehicles can search for and find the photo); location information; and other
9    information. A user can also apply a variety of "filters" or other visual effects that modify
10   the look of the posted photos. In addition, Instagram allows users to make comments on
11   posted photos, including photos that the user posts or photos posted by other users of
12   Instagram. Users can also "like" photos.

13       38.    Facebook users may create an Instagram account directly through their
14   Facebook account or they may create an Instagram account independently and then
15   associate their Instagram account with their Facebook account. For these reasons, a
16   particular user's Facebook profile and related account details are linked with a particular
17   users Instagram account. This information is retained by Instagram (and Facebook).

18       39.    Upon creating an Instagram account, an Instagram user must create a
19   unique Instagram username and an account password. This information is collected and
20   maintained by Instagram. Instagram also requests users to provide basic identity and
21   contact information upon registration and also allows users to provide additional identity
22   information for their user profile. This information may include the user's full name, e-
23   mail addresses, and phone numbers, as well as potentially other personal information
24   provided directly by the user to Instagram. Once an account is created, users may also
25   adjust various privacy and account settings for the account on Instagram. Instagram
26   collects and maintains this information.

27       40.    Instagram allows users to have "friends," which are other individuals with
28   whom the user can share information without making the information public. Friends on

AFFIDAVIT OF SA Meyer - 15
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

41.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

42.     Instagram also allows users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

43.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

44.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

45.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

46.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

47.     Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data

1  files and other information that may identify the particular electronic device that was

2  used to access Instagram.

3    48.    Instagram also collects other data associated with user content. For

4  example, Instagram collects any "hashtags" associated with user content (i.e., keywords

5  used), "geotags" that mark the location of a photo and which may include GPS data such

6  as latitude and longitude information, comments on photos, and other information.

7    49.    Instagram also may communicate with the user, by email or otherwise.

8  Instagram collects and maintains copies of communications between Instagram and the

9  user.

10    50.    On January 18, 2022, I served Instagram/Facebook, Inc. with a preservation

11  request pursuant to 18 U.S.C. § 2703(f), requiring Instagram/Facebook, Inc. to preserve

12  all information associated with the **SUBJECT ACCOUNT.**

13    51.    As explained herein, information stored in connection with an Instagram

14  account may provide crucial evidence of the "who, what, why, when, where, and how" of

15  the criminal conduct under investigation, thus enabling investigators to establish and

16  prove each element or alternatively, to exclude the innocent from further suspicion.

17    52.    In my training and experience, an Instagram user's account activity, IP log,

18  stored electronic communications, and other data retained by Instagram, can indicate who

19  has used or controlled the Instagram account. This "user attribution" evidence is

20  analogous to the search for "indicia of occupancy" while executing a search warrant at a

21  residence. For example, profile contact information, direct messaging logs, shared photos

22  and videos, and captions (and the data associated with the foregoing, such as geo-

23  location, date and time) may be evidence of who used or controlled the Instagram

24  account at a relevant time. Further, Instagram account activity can show how and when

25  the account was accessed or used. For example, as described herein, Instagram logs the

26  Internet Protocol (IP) addresses from which users access their accounts along with the

27  time and date. By determining the physical location associated with the logged IP

28  addresses, investigators can understand the chronological and geographic context of the

AFFIDAVIT OF SA Meyer - 17
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   account access and use relating to the crime under investigation. Such information allows

2   investigators to understand the geographic and chronological context of Instagram access,

3   use, and events relating to the crime under investigation.

4        53.    Additionally, Instagram builds geo-location into some of its services. Geo-

5   location allows, for example, users to "tag" their location in posts and Instagram

6   "friends" to locate each other. This geographic and timeline information may tend to

7   either inculpate or exculpate the Instagram account owner. Last, Instagram account

8   activity may provide relevant insight into the Instagram account owner's state of mind as

9   it relates to the offense under investigation. For example, information on the Instagram

10  account may indicate the owner's motive and intent to commit a crime (e.g., information

11  indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account

12  information in an effort to conceal evidence from law enforcement).

13       54.    Based on the information above, the computers of Instagram/Facebook, Inc.

14  are likely to contain all the material described above with respect to the **SUBJECT**

15  **ACCOUNT**, including stored electronic communications and information concerning

16  subscribers and their use of Instagram, such as account access information, which would

17  include information such as the IP addresses and devices used to access the account, as

18  well as other account information that might be used to identify the actual user or users of

19  the account at particular times.

20          **BACKGROUND RELEVANT TO SOCIAL MEDIA & NARCOTICS**

21       55.    Based on my training and experience, I know that individuals use social

22  media services, such as Facebook, Snapchat, Instagram, and similar sites, to post

23  photographs and videos of themselves in possession of controlled substances, and to

24  communicate with the public, their associates, and their adversaries.  Communication can

25  take form through pictures, videos, text, instant messaging, emojis, and etc. Also, many

26  social media services utilize GPS and Wi-Fi connectivity to determine the location of the

27  user. Users can also share their location with other users through these

28  applications. Based on my training and experience, and particularly my familiarity with

AFFIDAVIT OF SA Meyer - 18
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the Instagram social media platform, I know that drug traffickers can and often do use

2  Instagram as a means of advertising controlled substances for sale and otherwise

3  communicating with customers and suppliers about drug deals and other illegal activity

4  **INFORMATION TO BE SEARCHED AND ITEMS TO BE SEIZED**

5       56.    I anticipate executing this warrant under the Electronic Communications

6  Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and

7  (c)(1)(A), by using the warrant to require Instagram to disclose to the government copies

8  of the records and other information (including the content of communications)

9  particularly described in Section I of Attachment B.  Upon receipt of the information

10  described in Section I of Attachment B, government-authorized persons will review that

11  information to locate the items described in Section II of Attachment B.

12       57.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer

13  is not required for the service or execution of this warrant.  The government will execute

14  this warrant by serving it on Instagram.

15  **REQUEST FOR SEALING**

16       58.    I further request that the Court order that all papers in support of this

17  application, including the affidavit and search warrant, be sealed until further order of the

18  Court.  These documents discuss an ongoing criminal investigation that is neither public

19  nor known to all of the targets of the investigation.  Accordingly, there is good cause to

20  seal these documents because their premature disclosure may give targets an opportunity

21  to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns

22  of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

23  **CONCLUSION**

24       59.    Based on the foregoing, there is probable cause to believe that Andre

25  JACKSON has unlawfully distributed and possessed with intent to distribute a controlled

26  substance and engaged in alien smuggling in violation of 8 USC 1324.  Agents believe

27  that he has communicated about these offenses through his Instagram account,

28  **"itssdree_"** (the **SUBJECT ACCOUNT**). Therefore, I believe that evidence of

AFFIDAVIT OF SA Meyer - 19
USAO2021R01126

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  JACKSON's unlawful drug trafficking activity and alien smuggling will be found in the
2  **SUBJECT ACCOUNT** as further described in Attachments A. I seek authority for the
3  government to search all of the items specified in Section I of Attachments B, in order to
4  seize all of the data, documents and records that are identified in Section II of Attachment
5  B.

6       60.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer
7  is not required for the service or execution of this warrant. The government will execute
8  this warrant by serving it on Instagram. Because the warrant will be served on Instagram,
9  who will then compile the requested records at a time convenient to it, there exists
10 reasonable cause to permit the execution of the requested warrant at any time in the day
11 or night.

12      61.     Based on the forgoing, I request that the Court issue the proposed search
13 warrant.

15                                   Steven Meyer, Affiant
16                                   Special Agent, DEA

19 The above-named agent provided a sworn statement attesting to the truth of the contents
20 of the foregoing affidavit by telephone on the 31st day of January 2022.

22                                   J. RICHARD CREATURA
23                                   United States Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Attachment A**

**PROPERTY TO BE SEARCHED**


This warrant applies to information associated with Instagram account "itssdree_" (active on, but not limited to, January 17, 2021), that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

# ATTACHMENT B

## (ITEMS TO BE SEARCHED AND SEIZED)

**I.    Information to be disclosed by Facebook, Inc. ("Facebook")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Facebook, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on January 18, 2022, Facebook is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from January 1, 2021 to present**;**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.      Privacy and account settings, including change history; and

8.      Communications between Facebook and any person regarding the account, including contacts with support services and records of actions taken;

B.      All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, January 1, 2021 to present;

C.      All content, records, and other information relating to communications sent from or received by the Account January 1, 2021 to present;, including but not limited to:

1.      The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.      All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.      All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.      All associated logs and metadata;

D.      All content, records, and other information relating to all other interactions between the Account and other Instagram users January 1, 2021 to present, including but not limited to:

1.      Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.      All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

ATTACHMENT B (Jackson Instagram)
Page 2 of 3
USAO 2019R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.     All contacts and related sync information; and

4.     All associated logs and metadata;

E.     All records of searches performed by the account January 1, 2021 to present; and

F.     All location information, including location history, login activity, information geotags, and related metadata January 1, 2021 to present;.

Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**B**.     **Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 21 U.S.C. § 841(a)(1) & 846 and 8 U.S.C. § 1234, those violations involving Andre Lamount JACKSON, and others known and unknown, and occurring after January 1, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) The sale of illegal drugs and the illegal transportation of aliens into the United States,

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to the sale of illegal drugs and the illegal transportation of aliens into the United States, including records that help reveal their whereabouts.

ATTACHMENT B (Jackson Instagram)
Page 3 of 3
USAO 2019R01188

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970